THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:09-CR-41-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MALIK JAFAR-ABDUR MUTI ) | |
| a/k/a WAYNE MANDELL RUFFIN, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the Motion to Suppress [DE-18] filed by Defendant Malik Jafar-Abdur Muti ("Defendant"). The motion was referred to this court and is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); FED. R. CRIM. P. 59(b)(1). The government has responded to the motion [DE-19] and the court held a hearing on 29 July 2009 to further develop the record. Accordingly, the motion is ripe for review. For the reasons stated below, it is recommended that Defendant's motion be denied.

## **PROCEDURAL BACKGROUND**

On 13 May 2009, Defendant was charged by indictment with one count of possessing a firearm and ammunition having been previously convicted of a crime punishable by a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924. [DE-1]. The offense allegedly occurred on 19 February 2009 subsequent to a traffic stop involving a vehicle in which Defendant was a passenger. At the suppression hearing, Defendant presented no witness testimony. The government presented the testimony of Officer Charlie Espinoza ("Officer

Espinoza") of the Greenville Police Department's Impact Unit.[1]  Transcript of Hearing at 3-4 ("Tr.").

## STATEMENT OF THE FACTS

On 19 February 2009, at approximately 12:30 p.m., Officer Espinoza initiated a traffic stop of a Jeep Cherokee after observing the driver of the vehicle fail to use a turn signal and driving in excess of the posted speed limit. Tr. 4-5, 13. The driver was observed driving between the 30 and 35 mile per hour range in a residential area with a posted speed limit of 25 miles per hour. Tr. 5. Defendant was riding in the vehicle in the front passenger seat. *Id.* Officer Espinoza testified that the traffic stop occurred in Kearney Project, a housing area in Greenville known by police as a high crime area. Tr. 4-5. Officer Espinoza testified that after the vehicle came to a complete stop, he immediately observed the right passenger side door open. Tr. 5, 13. Officer Espinoza rushed to the passenger side of the vehicle and instructed Defendant to remain in the vehicle and to close the door. Tr. 5. According to Officer Espinoza, Defendant explained that the front passenger window was malfunctioning and Defendant therefore needed to open the door. Tr. 6. From the passenger side of the vehicle, Officer Espinoza introduced himself and informed the driver, Maronica Jones ("Ms. Jones"), of the reason for the traffic stop and asked her for her driver's license and registration. Tr. 6. While standing beside the passenger door and speaking to Ms. Jones, Officer Espinoza detected a faint odor of marijuana. Tr. 6. He observed also that Defendant appeared nervous, was unable to

---

[1] Officer Espinoza explained the Impact Unit "focus[es] on the housing areas, which primarily targets the drug areas, street-level narcotics, or the hot spots containing just high-crime areas." Tr. at 4.

remain still and was attempting to smoke an unlit cigarette. *Id.* At that point, Officer Espinoza called for a backup officer to arrive on the scene. Tr. 6, 19.

Officer Espinoza then asked Ms. Jones to step out of the vehicle for further questioning and to stand directly behind her vehicle, so that Officer Espinoza could maintain visual contact with Defendant. Tr. 7. Upon questioning by Officer Espinoza, Ms. Jones explained that she had been friends with Defendant, whom she knew as Malik, "for some time" and that she offered him a ride after seeing him "walking carrying a bag." Tr. 7. After Officer Espinoza informed Ms. Jones of the faint odor of marijuana, Ms. Jones stated that she was unaware of any illegal contraband on Defendant's person and to her knowledge, Defendant smoked only cigarettes. Tr. 7. Officer Espinoza did not issue Ms. Jones a ticket but gave her a verbal warning. Tr. 27. Subsequently, Officer Espinoza asked Ms. Jones if she had any objections to a search of her vehicle, to which she replied, "No, go right ahead." Tr. 8.

After instructing Ms. Jones to take a few more steps toward the patrol car (parked approximately 10-15 feet directly behind the stopped vehicle), Officer Espinoza returned to the front passenger side of the Jeep Cherokee, whereupon Defendant requested permission to leave. Tr. 8, 24, 28. Officer Espinoza asked Defendant, who continued to appear nervous and unable to sit still, to step out of the vehicle so that Officer Espinoza could search the vehicle pursuant to Ms. Jones' consent. Tr. 8. As Defendant stepped out of the vehicle, Defendant placed his right hand in his right front pocket, turned his back to Officer Espinoza, then removed his hand from his pocket and attempted to reach into the vehicle toward plastic bags located on the floorboard of the front passenger area. Tr. 8-9, 16, 29. Officer Espinoza grabbed Defendant's left arm, and upon believing Defendant may flee the scene or resist, Officer Espinoza placed Defendant in handcuffs but advised Defendant that he was not under arrest. Tr. 10, 21. Approximately two

3

minutes later, two additional police officers in separate police cars arrived at the scene. Tr. 20-21. Officer Espinoza escorted Defendant to his patrol car, and requested one of the assisting officers to stand beside Defendant while Officer Espinoza searched the vehicle. Tr. 10, 20-21.

In the floorboard of the passenger area, Officer Espinoza located a small brown plastic grocery bag containing a loaf of bread on top of a plastic garbage bag containing clothes and a Kel-Tec P-11 semiautomatic handgun. Tr. 10-11, 15. At this point, Officer Espinoza instructed the assisting officer to double-lock Defendant's handcuffs and to place Defendant under arrest. Tr. 10, 12. Officer Espinoza then completed the search of the car's interior. Tr. 11. No marijuana, marijuana seeds or residue was located inside the vehicle. Tr. 22. Officer Espinoza estimated that the amount of time between the initial stop and the search of the vehicle was approximately five minutes. Tr. 27.

Upon completion of the vehicle search, Officer Espinoza advised Defendant, now sitting in the back of the officer's patrol car, of his *Miranda* rights. Tr. 10-12. Defendant advised that he understood his rights and agreed to speak to Officer Espinoza without the presence of an attorney. Tr. 12. Defendant admitted ownership of the firearm and when questioned whether he was a convicted felon, responded in the affirmative.[2] Tr. 12.

## DISCUSSION

Defendant contends that Officer Espinoza exceeded the lawful scope of the traffic stop and thereby converted the police encounter into an illegal detention that tainted the subsequent search of the vehicle. Therefore, Defendant avers that his statements and the firearm should be

---

[2] After observing Officer Espinoza's testimony at the hearing and assessing his demeanor on the witness stand, under direct and cross examinations, the court finds his testimony to be credible and consistent. *See United States v. Stevenson*, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court).

4

suppressed under the fruit of the poisonous tree doctrine. Def.'s Mot. to Suppress ("Def.'s Mot.") at 1, 5, 7 [DE-20].

*A.   Traffic Stop*

At the outset, the Court notes that Defendant does not challenge the propriety of the traffic stop initiated by law enforcement. The Fourth Amendment to the United States Constitution assures individuals of the right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV. A traffic stop constitutes a seizure within the meaning of the Fourth Amendment; accordingly, to be reasonable a traffic stop must be supported by probable cause that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Ms. Jones' commission of two traffic infractions provided justification for the stop of her vehicle. *See id.* (explaining "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"). Rather, Defendant asserts that the officer improperly extended the traffic stop into an unconstitutional stop and seemingly implies that the officer's reliance on the driver's consent to search the vehicle was irrelevant as to Defendant's constitutional rights. Def.'s Mem. at 6.

"If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver [the requisite warning or] citation and determine that the driver is entitled to operate his vehicle." *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008), *cert. denied*, 129 S. Ct. 943 (2009). In order to extend the encounter with law enforcement beyond a traffic stop into an investigatory stop, the officer must lawfully obtain the *driver's consent* or have "reasonable suspicion" that illegal activity is afoot. *Id.* at 336 (explaining "[i]f a police officer wants to detain a driver beyond the scope of a routine traffic stop, . . . he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first

5

place"). In this case, Officer Espinoza obtained the driver's consent. Moreover, absent consent, Officer Espinoza had reasonable suspicion to detain the driver and Defendant. Finally, Officer Espinoza had probable cause to search the vehicle based on his detection of an odor of marijuana.

B.     *Voluntary Consent*

The Fourth Amendment prohibits unreasonable searches, and searches conducted without a warrant are *per se* unreasonable unless a valid exception to the warrant requirement is applicable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Voluntary consent to a search is such an exception. *Id.* Defendant has not raised the issue of whether the driver's consent was voluntary; however, as the driver's consent was one of the justifications for Officer Espinoza's search of the vehicle, the Court considers it accordingly.

An officer conducting a routine traffic stop may request consent to search the vehicle. *See Schneckloth*, 412 U.S. at 222 (explaining "a search authorized by consent is wholly valid"); *see also Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (explaining "we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so"). "The standard for measuring the scope of [an individual's] consent under the Fourth Amendment is that of "objective" reasonableness . . . ." *Jimeno*, 500 U.S. at 251. Furthermore, following a traffic stop, an individual need not be advised that she is free to leave for her consent to search to be found voluntary. *Ohio v. Robinette*, 519 U.S. 33, 36 (1996).

In this case, the traffic stop ended when "the officer had issued the [verbal warning] and returned [Ms. Jones'] driver's license, indicating that all business with [Ms. Jones] was completed and that [s]he was free to leave." *United States v. Lattimore*, 87 F.3d 647, 653 (4th

6

Cir. 1996). Subsequently, Officer Espinoza sought Ms. Jones' consent to search her vehicle due to his detection of a faint odor of marijuana during his initial encounter with the vehicle. Ms. Jones, despite explaining she had no knowledge of drug use by Defendant, nonetheless agreed to the search without placing any explicit limitation on the scope of the search. Accordingly, "it was objectively reasonable for [Officer Espinoza] to conclude that the general consent to search [Ms. Jones'] car included consent to search containers within that car which might bear drugs." *Jimeno*, 500 U.S. at 252 (1991). Given "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container, . . . [t]he authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the bags lying on the car's floor." *Id.* Based on the totality of the circumstances, Ms. Jones' consent was voluntarily given. At no time did Ms. Jones' words or actions indicate that she opposed the search or imposed any limits on its scope and there is no evidence that her consent was the product of duress or police coercion. *See United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2004) (explaining "a suspect's failure to object (or withdraw [her] consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search").

As Ms. Jones' voluntary consent sustains the legality of the search of her vehicle and Defendant's bags located within, this ground alone provides sufficient basis for denial of Defendant's motion to suppress.

C. *Reasonable Suspicion*

In addition, as indicated above, the search may be upheld as valid on the ground that the officer has reasonable suspicion that illegal activity was afoot. *See Branch*, 537 F.3d at 337. Reasonable suspicion is somewhat less than probable cause, but it "does require a 'minimal level

7

of objective justification' for the police action." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In determining whether there was reasonable suspicion, the court must look at the totality of the circumstances "to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). "Additionally, officers are permitted to draw on their experience and specialized training to make inferences from and deductions about cumulative evidence." *United States v. Blanc*, 245 Fed. Appx. 271, 273 (4th Cir. 2007). "Thus, a person's behavior, though appearing innocent, may raise questions justifying a detention when viewed in the totality and combined with the police officer's knowledge and experience." *Id.* (citing *Wardlow*, 528 U.S. at 125-26).

Here, Officer Espinoza testified to five years of experience as a police officer, including narcotics training, and former employment as a narcotics investigator. Tr. 4, 14. While Defendant has characterized Officer Espinoza's suspicions during the stop as a mere hunch, *see* Tr. 33, the Court finds that Officer Espinoza had a particularized and objective basis for suspecting wrongdoing. *See Arvizu*, 534 U.S. at 274. In particular, his suspicion was supported by several specific, objective and articulable facts: the stop occurred in a known high-crime area; Defendant's inability to sit still, his attempt to smoke an unlit cigarette and the odor of marijuana. *See United States v. Diggs*, 267 Fed. Appx. 225, 227 (4th Cir. 2008) ("When reviewing the totality of the circumstances, relevant behavior includes whether the stop occurred in a high-crime area, and whether the suspect seemed nervous or evasive."). Taking all these facts in concert, Officer Espinoza had an articulable suspicion that Defendant could have been engaged in concealing contraband within the vehicle and therefore acted reasonably when he prolonged the traffic stop to investigate further.

8

*D.     Probable Cause for Search*

Additionally, the officer was within the scope of the automobile exception when he initiated the warrantless entry into Ms. Jones' vehicle and searched the baggage therein. *See Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, . . . a [warrantless] search of any area of the vehicle in which the evidence might be found[] [is authorized].") (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)). Under the automobile exception to the Fourth Amendment warrant requirement, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband," an officer may search the vehicle without a warrant. *Pennsylvania v. Labron*, 518 U.S. 938, 941 (1996); *United States v. Brookins*, 345 F.3d 231, 235 (4th Cir. 2003).

Probable cause exists when "the facts and circumstances within an officer's knowledge -- or of which he possesses reasonably trustworthy information -- are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Gomez v. Atkins*, 296 F.3d 253, 262 (4th Cir. 2002) (quoting *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000)). "The Fourth Circuit has specifically held that when the totality of the circumstances gives a law enforcement officer probable cause to believe that there is marijuana in the car, the officer has the right to conduct a warrantless search of the vehicle." *United States v. Sinclair*, No. 2:08-CR-144, 2009 U.S. Dist. LEXIS 42542, at *14, 2009 WL 1393438, at *5 (D.S.C. May 18, 2009) (citing *United States v. Davis*, 177 Fed. Appx. 347, 350-51 (4th Cir. 2006)).

In this case, Officer Espinoza testified that he believed he had probable cause based upon a number of factors, which are identical to the reasons given in support of the lower reasonable suspicion standard. In particular, prior to the vehicle search, the officer possessed probable cause to believe that the vehicle contained marijuana based on a (1) the odor of marijuana; (2)

9

nervous signs exhibited by Defendant, including the inability to remain still and an attempt to smoke an unlit cigarette; and (3) the turning of Defendant's back towards the officer and reaching towards the bags located in the car. *See United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) ("While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is. Thus, when marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile . . . ."); *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) (explaining "[o]nce the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car") (citing *United States v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991) (holding that, because marijuana has a distinct smell, "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage")). Moreover, the search of Defendant's bags was permissible given the possibility that drugs could have been concealed within. *See Wyoming v. Houghton*, 526 U.S. 295, 307 (1999) (holding "that police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search"). Accordingly, probable cause establishes an independent basis for the search of Ms. Jones' vehicle and the bags within and thus the denial of Defendant's motion to suppress.

Nonetheless, Defendant asserts that this search was an unreasonable violation of his Fourth Amendment rights pursuant to the Supreme Court's recent decision in *Gant*. Def's Mem. at 4-5. *Gant* however is not as compelling as urged by Defendant. In *Gant*, the defendant had been arrested for driving with a suspended drivers license, handcuffed, and locked in the back of a patrol car before the officers searched his vehicle and found cocaine in a jacket in the back seat. *Gant*, 129 S. Ct. 1710 at 1715. The Supreme Court addressed the scope of the "search
10

incident to arrest" exception (first discussed in *New York v. Belton*[3]), holding that police "may permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S. Ct. at 1721. That is, the Supreme Court eliminated the automatic authority to search a vehicle upon the sole fact of an occupant's arrest. *Id.* at 1719.

However, here, Officer Espinoza did not claim that the automobile was searched incident to a lawful arrest; rather, he testified, in part, that the vehicle was searched pursuant to the automobile exception, and that independent probable cause existed to search the vehicle - one of the exceptions to the warrant requireme nt that the *Gant* court relied upon in justifying its decision to limit the scope of the "search incident to arrest" exception. *See id.* at 1721 (explaining a broad reading of *Belton* is unnecessary due to other established exceptions to the warrant requirement and listing some of these exceptions). The Supreme Court observed that, as compared to the search incident to arrest exception, the automobile exception "allows searches for evidence relevant to offenses other than the offense of arrest, and *the scope of the search authorized is broader.*" *Id.* (emphasis added). In this case, absent consent, the smell of marijuana coming from the properly stopped vehicle and the actions of Defendant delineated above satisfy the probable cause for search of the vehicle and the baggage therein. *See United States v. Kellam*, 568 F.3d 125, 137 n.15 (4th Cir. 2009) (distinguishing case from *Gant* on the basis that "the localized smell of marijuana in [the defendant's] vehicle provided ample probable

---

[3] In *Belton*, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981). In *Gant*, the Supreme Court acknowledged that lower courts generally had read *Belton* to authorize "a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 129 S. Ct. at 1718.

11

cause for the actions of the officers"); *United States v. Jackson*, No. 8:08CR4272009, U.S. Dist. LEXIS 40000, at *3 n.2, 2009 WL 1361440, at *1 n.2 (D. Neb. May 11, 2009) (explaining "the stop for failure to have appropriate license plates would no longer permit a search of the vehicle once the passengers were safely secured. However, . . . the smell of marijuana gave the police officers probable cause to believe the vehicle contained evidence of criminal activity, so as to permit the search. Accordingly, this court determines that *Gant* does not change the outcome of this case.") (citing *Ross*, 456 U.S. at 820-21)). Accordingly, *Gant* is inapplicable to the matter at hand.

Finally, given the traffic stop was lawful and the extension thereof for investigatory purposes was supported by consent, reasonable suspicion and probable cause, neither the seizure of Defendant's firearm nor his statements constitute fruit of the poisonous tree. *See Colorado v. Spring*, 479 U.S. 564, 572 (1987) (explaining "[evidence] cannot be "fruit of the poisonous tree" if the tree itself is not poisonous").

## CONCLUSION

For the reasons set forth above, the court RECOMMENDS that Defendant's motion to suppress be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation. Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

12

This, the 19th day of August, 2009.

                                                                      Robert B. Jones, Jr.
                                                                      United States Magistrate Judge